**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

**SNOQUALMIE INDIAN TRIBE**, a federally-recognized Indian tribe as *parens patriae*, by and through the **SNOQUALMIE ENTERTAINMENT AUTHORITY d/b/a SNOQUALMIE CASINO**,

Plaintiff,

v.

**CITY OF SNOQUALMIE; MATTHEW LARSON**, in his official capacity as City Mayor; **ROBERT JEANS**, in his official capacity as City Council Member; **CHELLEY PATTERSON**, in her official capacity as City Council Member; **BRYAN HOLLOWAY**, in his official capacity as City Council Member; **BRAD TOFT**, in his official capacity as City Council Member; **HEATHER MUNDEN,** in her official capacity as City Council Member, **CHARLES PETERSON**, in his official capacity as City Council Member; **KATHI PREWITT**, in her official capacity as City Council Member and Mayor Pro Tem; **ROBERT LARSON,** in his official capacity as City Administrator; and **DANIEL MARCINKO,** in his official capacity as City Public Works Director,

Defendants.

**Case No.: ________________________**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

## INTRODUCTION

The Snoqualmie Indian Tribe, as *parens patriae* on behalf of its Tribal members acting through the Tribal member governing body of the Snoqualmie Casino, brings this legal action to stop the City of Snoqualmie from engaging in intentional race discrimination against the Tribe. The City is the *only* provider of sewer utility services to the Tribe's Snoqualmie Casino, and has been providing such services under an agreement entered into in 2004. In October 2015, the City informed the Tribe that, despite the Tribe's continuous payment for such services, the City intends to terminate providing sewer services to the Casino by no later than November 2016. The City is also actively blocking the Tribe's efforts to obtain sewer services without relying exclusively on the City. Without sewer services, the Casino will be forced to close indefinitely, threatening the Tribe's ability to offer core governmental programs and services to its Tribal members, jeopardizing business relationships upon which the Tribe depends, and risking the jobs of 1200 employees. The Tribe seeks declaratory and injunctive relief to protect its right to the full and equal benefit of the law, and to enjoin Defendants from terminating sewer services in violation of 42 U.S.C. § 1981 and RCW 35.67.310, and from interfering with business expectancies.

## PARTIES

### A. Plaintiff

1. Plaintiff Snoqualmie Indian Tribe, on behalf of its Tribal members, brings this action by and through the Tribal members of the Snoqualmie Entertainment Authority ("SEA"), doing business as the Snoqualmie Casino ("Casino") (collectively "Tribe"). The Tribe is a federally-recognized sovereign Indian tribe with its governmental offices at 9571 Ethan Wade Way SE, Snoqualmie, WA 98065. The Tribe operates pursuant to its Constitution as amended on June 24, 2006, and conducts its governmental operations through an elected Snoqualmie Tribal Council. The Snoqualmie Tribal Council has primary responsibility to protect the welfare of Snoqualmie Tribal members, and exercise governmental control over Tribal lands. The Snoqualmie Indian Reservation is located on lands held in trust by the United States on behalf of

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

the Tribe, and is located within the Urban Growth Area of the City of Snoqualmie. With respect to the Casino, the Tribe acts though the SEA, an unincorporated governmental component and a subordinate instrumentality and agency of the Tribal government under Tribal law. The SEA, comprised of Tribal members who also serve on the Snoqualmie Tribal Council, oversees operation of the wholly-owned gaming business of the Tribe, the Casino, which provides gaming, entertainment, and dining on the Tribe's Reservation, and which operates for the benefit of the Tribe and Tribal members. Plaintiff expressly retains its sovereign immunity from unconsented suit.

2. The Tribe has a strong and immediate interest in ensuring that Defendants cease discriminatory and unlawful actions that will directly harm Plaintiff.

**B. Defendants**

3. Defendant City of Snoqualmie ("City") is a Washington municipal corporation organized and operating under the Optional Municipal Code, RCW 35A.

4. Defendant City of Snoqualmie is governed by a mayor and elected council members as provided under RCW 35A.12.010; City of Snoqualmie Municipal Code ("SMC") § 1.08.010. The City of Snoqualmie's City Council is composed of seven elected members as provided by SMC § 2.24.030.

5. The City is authorized by RCW 35.67.310 and SMC § 13.04.290 to permit connection with its sewers from property beyond City limits. Defendant City of Snoqualmie agreed to provide such services to Plaintiff in April 2004.

6. Defendant Matthew Larson is sued in his official capacity as City Mayor. Defendant presides over City Council meetings, develops ordinances and resolutions for consideration by City Council, and acts at the direction of the City Council. On October 15, 2015, Defendant sent a letter to the Tribe's Chairwoman stating that the City plans to terminate sewer services to Plaintiff before November 30, 2016.

7. Defendant Robert Jeans is sued in his official capacity as City Council Member, position 1. As Council Member, Defendant exercises shared decision-making authority on

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

matters concerning the City's programs and departments including Public Works. Defendant votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

8. Defendant Chelley Patterson is sued in her official capacity as City Council Member, position 2. As Council Member, Defendant exercises shared decision-making authority on matters concerning the City's programs and departments including Public Works. Defendant votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

9. Defendant Bryan Holloway is sued in his official capacity as City Council Member, position 3. As Council Member, Defendant exercises shared decision-making authority on matters concerning the City's programs and departments including Public Works. Defendant votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

10. Defendant Brad Toft is sued in his official capacity as City Council Member, position 4. As Council Member, Defendant exercises shared decision-making authority on matters concerning the City's programs and departments including Public Works. Defendant votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

11. Defendant Heather Munden is sued in her official capacity as City Council Member, position 5. As Council Member, Defendant exercises shared decision-making authority on matters concerning the City's programs and departments including Public Works. Defendant votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

12. Defendant Charles Peterson is sued in his official capacity as City Council Member, position 6. As Council Member, Defendant exercises shared decision-making authority on matters concerning the City's programs and departments including Public Works. Defendant

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

13. Defendant Kathi Prewitt is sued in her official capacity as City Council member, position 7 and Mayor Pro-Tem. As Council member, Defendant exercises shared decision-making authority on matters concerning the City's programs and departments including Public Works. Defendant votes on resolutions and ordinances that come before City Council which direct the Mayor and other City officials and employees to take action with regard to contracts for services.

14. Defendant Robert Larson is sued in his official capacity as City Administrator. Mr. Larson serves as the City's Chief Administrative Officer and is responsible for overseeing and directing the City's day-to-day operations and for coordinating all City departments and programs, including Public Works.

15. Defendant Daniel J. Marcinko is sued in his official capacity as the City's Public Works Director. As Director of the Public Works Department, Mr. Marcinko directly oversees and directs the administration, planning, and day-to-day operation of the city's sanitary sewer treatment and collection system.

16. Defendants are all non-Indian individuals.

17. Defendants' actions complained of herein will result in a denial of Plaintiff's Constitutional right to be free from race discrimination, to make and enforce contracts, and the right to full and equal benefit of all laws as codified by 42 U.S.C. § 1981.

18. Defendants' actions complained of herein will result in a violation of the City's duty to provide sewer services under RCW 35.67.310.

19. Defendants' actions complained of herein will tortiously interfere with Plaintiff's well-established contractual relationships and business expectancies upon which the continuous operation of the Casino relies.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1362, 1367, 2201, and 2202, as the causes of action arise under the Constitution and laws of the United States, or are state law claims cognizable under this Court's supplemental jurisdiction.

21. The Court has personal jurisdiction over each defendant for reasons including, but not limited to: each Defendant resides in and/or conducts business in the State of Washington and the underlying facts arose from actions occurring within the Western District of Washington.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(2) because the parties reside in King County, and the wrongful acts alleged herein occurred in the jurisdiction of the United States District Court for the Western District of Washington.

## FACTUAL ALLEGATIONS

### A. The Tribe's Ownership and Operation of Snoqualmie Casino

23. In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA"), a principal goal of which was to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency and strong tribal governments."

24. Pursuant to the IGRA, the Tribe built, owns and operates the Casino, which opened in November 2008 on the Tribe's Reservation. The Casino represents the Tribe's primary engine of economic self-sufficiency.

25. The Tribe operates the Casino for the benefit of the Tribe and Snoqualmie Tribal members. Revenues from the Casino allow the Tribe to provide Tribal services including emergency food assistance, youth camp, early learning, a community medical clinic, education tuition assistance, the Raging River Recovery Center, emergency housing assistance, and social services for families; Tribal governmental operations; and to obtain credit, repay debt, and secure a sound Tribal economy for future generations of Tribal members.

26. Plaintiff is the largest employer in the Snoqualmie Valley. The Casino employs approximately 1200 individuals, including both Tribal members and non-tribal members.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

27. On an average day, the Casino welcomes between 6000 and 7000 patrons to its gaming, dining and entertainment facilities.

28. To remain open to serve the public, the Casino must comply with Tribal and Federal law, including federal regulations promulgated by the National Indian Gaming Commission which require the Tribe to operate the Casino in accordance with the Tribal-State Compact for Class III Gaming Between the Snoqualmie Indian Tribe and the State of Washington ("Compact"). Section XIV.A of the Compact requires the Casino to comply with the Uniform Building Code, now known as the International Building Code. Under Section 2902.3.1 of the International Building Code, the Casino is obligated to provide the public "access to the required toilet facilities at all times that the building is occupied."

29. The Casino has contractual business relationships with vendors who supply the three restaurants, deli and cafe located within the Casino, the Casino gift shop, entertainers who perform at the Casino, gaming machine vendors, and lending institutions.

30. The Casino relies on the goodwill and reputation it has developed with each vendor with whom it has ongoing contracts for purchase of supplies and services to operate the Casino.

31. The Casino maintains business relationships with each customer in its gaming, entertainment and dining facilities, many of whom purchase tickets for entertainment performances weeks in advance. The Casino's business relationship with its customers forms the core of its business, which requires consistent access to the Casino and the many amenities that it provides.

**B. The Tribe's Contract for Sewer Services With the City**

32. On April 26, 2004, the Tribe entered into the "Agreement Between the City of Snoqualmie and the Snoqualmie Tribe for the Provision of Police, Fire and Emergency Medical Services to the Snoqualmie Hills Project and Sewer Utility Service to the Tribe's Initial Reservation" ("Agreement") for the provision of essential services, including sewer, fire

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

suppression and emergency medical services to the Tribe's Reservation, referred to as the "Property" in the Agreement.

33. Section 1.4 of the Agreement identifies the Tribe's intent to build and operate a Casino on the Tribe's Reservation, referred to as the "Project" in the Agreement.

34. In Section 2.6 of the Agreement, the City agreed to "accept waste water effluent . . . from the Property . . ."

35. In Section 1.7 of the Agreement, the City represented that it "has sewage treatment capacity within its combined utility to provide Utility Services to the Project while still meeting its obligations to serve the existing City and projected growth within the Urban Growth Area during the term of this Agreement."

36. In Section 1.7 of the Agreement, the City and Tribe agreed that the City's provision of sewer services to the Tribe for the Project was "in the best interests of the Tribe and the City."

37. The Agreement at Section 2.6.2 provides that the Tribe "shall secure waste water treatment plant capacity for [360] ERUs [Equivalent Residential Units] by payment of . . . $3,529 per ERU" "payable at the time of connection to the municipal sewer system." Each ERU is the equivalent of up to 180 gallons of wastewater per day and 0.5 pound of biochemical oxygen demand (BOD) per day.

38. Under the Agreement, at the time of connection, the Tribe paid the City approximately $1,270,440.00 for sewer capacity.

39. The Agreement at Section 2.6.4 provides that the Tribe "may request additional treatment capacity from the City" at a cost to be determined "by future agreement."

40. The stated term of the Agreement was seven years after the opening of the Casino, at which time the Agreement would automatically renew for five successive additional periods of seven years. When the Casino opened in November 2008, under the automatic extensions, the City was responsible for providing sewer services to the Tribe for thirty-five years, until 2043.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

41. Section 2.7 of the Agreement provides that the City could suspend sewer services only in the event the Tribe is more than 30 days past due on any required payment.

42. The Agreement was amended on January 28, 2008; however, the amendment did not change any provisions related to sewer services.

43. At all times relevant, the City has provided uninterrupted sewer services to the Casino since on or before the opening of the Casino, and the Tribe has paid each bill from the City for such services in full.

44. Plaintiff depends entirely on the City for the provision of sewer services. The Tribe does not operate its own wastewater treatment facility and the Urban Growth Area ("UGA") boundary presently prohibits the Tribe from contracting with another municipality, such as North Bend, for such sewer services.

**C. The City's 2014 Rate Increase**

45. The Agreement at Section 2.6.6 provides that "[t]he rate for waste water treatment shall be the then-current rate at any time established by City Council for sewer service for one residence multiplied by the number of ERUs actually flowing through the City-owned facilities based on the most recent measure sewage flow and BOD."

46. The Agreement is silent as to whether the Tribe would be charged the "in-City" or "outside-City" rate for sewer services; however the Tribe was charged the "in-City" rate since the inception of the Agreement.

47. The Tribe is billed monthly by the City for sewer service through Account No. 014934-00 at service address "37500 SE N Bend Way – Casino." Until July 1, 2014, the Tribe was paying the then-residential rate of $42.16 per unit.

48. In June 2014, the City enacted Ordinance No. 1133 which increased sewer service rates for customers located outside city limits to 1.5 times the in-city rates, effective July 1, 2014. SMC § 13.08.010(D).

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

49. At this time the City determined, for the first time, without providing justification or amending the Agreement, that the Tribe should pay the "outside-City" rate, such that the Tribe would be charged a rate 1.5 times the rate it had been previously charged.

50. On information and belief, the City targeted its rate increase and changed its treatment of the Tribe from "in-City" to "outside-City" with the intent of eliciting additional money from only the Tribe.

51. On information and belief, the vast majority of other landowners outside City limits, and within the City's UGA, rely on private septic systems to address their sewer needs. The Casino is one of few businesses located outside City limits, and within the UGA, that is connected to the City's sewer system.

52. In 2014, Plaintiff paid the City approximately $485,300.99 for sewer services.

53. From January to October 2015, Plaintiff has paid the City approximately $494,040.99 for sewer services.

54. Since 2008, the Tribe has paid the City approximately $3 Million for sewer services, including related testing and taxes.

**D. Efforts to Extend the Agreement**

55. Beginning in 2013, the City and the Tribe began discussions about amending the Agreement. In an electronic mail dated September 18, 2013, Mayor Larson indicated the City's desire to "carry[] forward the existing provisions for . . . sewer services" and acknowledged the importance of the Agreement for the Tribe: "so that the Tribe can count on uninterrupted services to the Casino."

56. In 2015, both the Tribe and the City indicated concerns with the status quo Agreement. Representatives from the Tribe and the City met on July 24, 2015 to discuss continuing the Agreement past the November 2015 scheduled expiration of the initial term of the Agreement. At the meeting, the Tribe expressed its desire to amend the Agreement to extend it for a year while the parties could meet to explore, in good faith, a long-term mutually beneficial solution concerning sewer utility service. The City expressed a desire to amend provisions of the

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

Agreement pertaining to allocation of impact mitigation fund dollars under the Compact with the State.

57. On August 25, 2015, by letter from Mayor Larson, the City threatened to cease providing sewer services the Casino, stating, "the City is prepared to cease providing services to the Tribe upon the Agreement's expiration."

58. In response, on September 22, 2015, the Tribe proposed a second amendment to the Agreement that kept all terms in place, but extended the Agreement for one year.

59. The City responded on October 1, 2015 that it would agree to a one-year extension, but only if there was a commitment by the Tribe "to address human services funding needs" at the City. The City's edits to the proposed second amendment to the Agreement sought to amend an unrelated provision of the Agreement, Section 2.8.2, which deals with use of mitigation funds from the Casino under the Tribe's Compact. The City's amendment sought both the ability for the City to directly obtain greater money from the impact mitigation fund and to require the Tribe to pay $100,000 to be used by the City in its discretion for human services. This proposal by the City was in addition to the continued payment of the higher rate for sewer service.

60. The Tribe responded on October 8, 2015, rejecting the City's "pay to play" demand. The Tribe reiterated its desire for a second amendment to the Agreement that kept all terms in place, but extended the Agreement for one year. The Tribe signed the second amendment to the Agreement that the Tribe had proposed.

61. On October 15, 2015, the City responded by signing the version of the second amendment to the Agreement proposed by the Tribe renewing the Agreement for a period of one year. However, accompanying the signed amendment was another letter from Mayor Larson that triggers this action separate and apart from the Agreement.

**E. Defendants' Decision to Terminate Sewer Services to the Tribe**

62. On October 15, 2015, by letter from Mayor Larson, the City notified the Tribe that the City Council had voted to end sewer services to the Tribe before November 30, 2016.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

63. The City told the Tribe "it is also important that you know that the two members who voted against the Second Amendment expressed their desire that all services to the Tribe end *now*, at the end of the initial Services Agreement term." Nonetheless, "a majority of the [City] Council agreed that the provision of City services to the Tribe should come to an end" and that the City was committing to a one-year extension "only so that an orderly transition to other services can be arranged . . ." during the one-year period.

64. The City also submitted a letter to the United States Bureau of Indian Affairs on November 2, 2015, stating: "the City has notified the Tribe that it no longer wishes to be in a business relationship with the Tribe."

**F. Defendants' Efforts to Stop the Tribe from Having Any Sewer Service**

65. Not content with informing the Tribe that the City intended to end the provision of sewer service to the Tribe before November 30, 2016, the City has also made clear its intent to prevent the Tribe from obtaining sewer services elsewhere.

66. Pursuant to Washington State's Growth Management Act and King County Code, the Tribe cannot presently connect to the sewer of the next closest city, North Bend, because public sewer services are prohibited from crossing rural areas or natural resource lands.

67. In the City's October 15, 2015 letter to the Tribe, Mayor Larson warned the Tribe that "the City will oppose any extension of other utility services outside or across established municipal UGA boundaries."

68. The Tribe also cannot construct a waste water treatment facility within the next year. Even if it could, the City has vowed to oppose such an effort as well.

69. Again, in the October 15, 2015 letter from the City, Mayor Larson stated that the Tribe should not view the City's stance with respect to sewer services as "acquiescence to any and all other options for services."

70. The City has submitted comments to the United States Bureau of Indian Affairs opposing the Tribe's efforts to take land into trust for the Tribe, suggesting that if the land were

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

to be used for "sewer and water facilities" that the City "will continue to oppose [such] fee to trust conversions."

71. The City is trying to choke out the Tribe on the basis of race. The City has told the Tribe and third parties that it has no intention of providing sewer services to the Tribe, will oppose any effort for the Tribe to connect to another municipality's sewer service, and is opposing the Tribe's efforts to take land into trust that the City believes could be used for a waste water treatment plant.

72. The Tribe has no ability to provide its own sewer treatment facility at this time. Further, Plaintiff is not aware of any alternative source of sewer services. Therefore, the one-year extension of the Agreement cannot reasonably result in the Tribe and Casino's transition to an alternative provider because no such alternative provider exists.

73. Defendants know or should know that, if there is no other sewer service provider available to Plaintiff when the City terminates sewer services, the Casino would be forced to close.

74. Plaintiff has suffered and will continue to suffer direct harm as a result of Defendants' denial of basic sewer utility service, and Defendants unjustified interference with other sewer options that the Tribe could seek to exercise.

**G. The City's Efforts to Block Access to Other Essential Services**

75. Section 2.3 of the Agreement governs the provision of fire and emergency medical services to the Casino by the City. The termination of the Agreement before November 30, 2016, will also terminate the City's provision of these services to the Tribe.

76. Plaintiff pays for the City's provision of fire and emergency medical services to the Tribe's Reservation.

77. In early October 2015, representatives of the Tribe met with Eastside Fire & Rescue to explore the Tribe's options to ensure uninterrupted fire and EMT services in the event the City allowed the Services Agreement to expire.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

78. Since that meeting, the Tribe has learned that City representatives contacted Eastside Fire & Rescue and stated that the Tribe could not enter into such an agreement because of the Agreement with the City; and therefore, that East Side Fire & Rescue should not sign an agreement with the Tribe.

79. On information and belief, at the direction of Defendants, on or about November 13, 2015, the Snoqualmie City Fire Chief sent Eastside Fire & Rescue a public records request to obtain any drafts of agreement or other correspondence with Plaintiff.

80. The City's misrepresentations attempted to interfere with the Tribe's ability to ensure uninterrupted fire and EMT services for the Casino. The result is potential increased costs for the Tribe because the Tribe must indemnify Eastside Fire & Rescue in the event the City sues Eastside Fire & Rescue relating its agreement with the Tribe.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1981)

81. Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

82. 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of public and private contracts. Subsection (a) provides, "All persons . . . shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . ." Section 1981(b) defines the terms "make and enforce contracts" contained in subsection (a) to include "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Subsection (c) clarifies that Section 1981 rights are protected against impairment by "nongovernmental discrimination and impairment under color of State law."

83. Plaintiff as *parens patriae* represents the individual Tribal members who make up the Tribe, and is made up of and governed entirely by Snoqualmie Tribal member American

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

Indians who, in turn, own and operate the Casino for the benefit of the Tribe and Tribal members. Tribal members are members of an identifiable protected class on the basis of race. As a business wholly-owned and operated by a federally recognized Indian tribe, governed by Tribal members and located on an Indian Reservation, the Casino is a business with imputed racial identity and/or has acquired a racial identity as a matter of law, and is a "person" protected under 42 U.S.C. § 1981.

84. Defendants' decision to refuse to continue to provide sewer services violates Plaintiff's substantive rights pursuant to Section 1981.

85. Plaintiff has substantive rights under 42 U.S.C. § 1981 to "make and enforce contracts" with the City for the provision of sewer services.

86. Plaintiff has substantive rights under 42 U.S.C. § 1981 to the "full and equal benefit of the laws . . . as enjoyed by white citizens," including the benefit of receiving sewer services from the City pursuant to RCW 35.67.310 in exchange for payment by Plaintiff.

87. Defendants' decision to refuse sewer services to Plaintiff denies Plaintiff a basic utility service that the City holds out and offers to non-Indians within the City of Snoqualmie and within its UGA.

88. On information and belief, the City is overcharging the Tribe for sewer services.

89. On information and belief, the City has not terminated or threatened termination of sewer utility service of any other paying customer within City limits and the City's UGA.

90. Defendants' refusal to provide sewer services intentionally and unconstitutionally excludes Plaintiff from the benefit of services available under RCW 35.67.310.

91. Defendants' refusal to provide sewer services, which is analogous to racially-motivated red lining, constitutes official City policy or custom under 42 U.S.C. § 1981.

92. Defendants are state actors who may be liable for actions taken in violation of 42 U.S.C. § 1981.

93. Defendants' refusal to provide sewer services constitutes an improper purpose or improper means, and is made in bad faith based on the Plaintiff's status.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

94. No individual Defendant has taken action to stop the City's discriminatory treatment.

95. Defendants have together acted and continue to act together in a manner that will deny Plaintiff its right under federal law to enjoy the full and equal benefit of the law pursuant to 42 U.S.C. § 1981.

96. Plaintiff has suffered and will continue to suffer discrimination as a result of Defendants' intentional decision to deny basic utilities offered by the City on the basis of race that will force the Casino to close and will immediately and significantly diminish the Tribe's ability to provide governmental operations, programs and services.

**SECOND CAUSE OF ACTION**
**(Violation of Defendants' Duties Under RCW 35.67.310)**

97. Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

98. Cities in the State of Washington are authorized to provide sanitary sewer services to landowners beyond their city limits. RCW 35.67.310 provides,

> Every city or town may permit connections with any of its sewers, either directly or indirectly, from property beyond its limits, upon such terms, conditions and payments as may be prescribed by ordinance, which may be required by the city or town to be evidenced by a written agreement between the city or town and the owner of the property to be served by the connecting sewer.

99. Municipalities are prohibited from imposing conditions on the provision of sewer services that are unreasonable or otherwise unlawful.

100. Municipalities have an affirmative duty to provide sewer services when one has held itself out as willing to provide sewer services or when one is the exclusive supplier of sewer services in the region.

101. The City has held itself out as willing to provide sewer services to Plaintiff through the execution of the Agreement and by its provision of uninterrupted sewer services to Plaintiff since the Agreement was executed in 2004.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

102. The City is the exclusive supplier of sewer services to Plaintiff, and there is no present alternative provider of sewer services available to Plaintiff.

103. As the exclusive supplier of sewer services in the region, Defendants have a duty under RCW 35.67.310 to continue providing sewer services to Plaintiff.

104. Defendants have acted together, and continue to act together, in a manner that violates their duty under RCW 35.67.310 to continue providing uninterrupted sewer services to Plaintiff.

105. Plaintiff has suffered and will continue to suffer harm caused by Defendants' actions that will disable normal operation of toilet and sewer facilities at the Casino and will force the Casino to close, which will immediately and significantly diminish the Tribe's ability to provide governmental operations, programs and services.

## THIRD CAUSE OF ACTION
## (Tortious Interference With Contractual Relations And Business Expectancies)

106. Plaintiff hereby incorporates all preceding paragraphs of this Complaint as if fully set forth herein.

107. The elements of a claim for tortious interference with contractual relations and business expectancies are as follows: (1) a valid contractual relationship or business expectancy exists, (2) Defendants have knowledge of it, (3) Defendants intentionally interfere with the contractual relationship or business expectancy, (4) causing a breach or termination in the relationship by an improper purpose or means, and (5) resulting in damage to Plaintiff.

108. A valid business expectancy includes any prospective contractual or business relationship of pecuniary value.

109. Plaintiff has entered into numerous contracts related to the operation of the Casino.

110. Plaintiff has business relationships with each customer of the Casino.

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

111. Defendants have full knowledge of the Tribe's and Casino's contracts and business expectancies related to the Casino, all of which would be disrupted by a closure of the Casino caused by Defendants' actions.

112. Defendants interfered with the Tribe's efforts to contract with other providers for fire suppression and emergency medical services to the Casino.

113. Defendants have acted, and continue to act, in a manner that intentionally interferes with Plaintiff's contractual and business expectancies for an improper purpose.

114. Defendants' actions are not justified.

115. Plaintiff has suffered and will continue to suffer harm caused by Defendants' actions that will disable normal operation of toilet and sewer facilities at the Casino and will force the Casino to close, which will immediately and significantly diminish the Tribe's ability to provide governmental operations, programs and services.

116. Plaintiff has and will suffer monetary damage in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby respectfully demands and prays for the following relief:

1. A declaration pursuant to 28 U.S.C. §§ 2201-02 that Defendants have discriminated against Plaintiff on the basis of race by refusing to provide sewer services to the Casino when the City is the only available provider;

2. A declaration that Defendants' refusal to provide sewer services violates Plaintiff's rights to make and enforce contracts and to the full and equal benefit of all laws under 42 U.S.C. § 1981;

3. A declaration that Defendants have a duty under RCW 35.67.310 to continue providing sewer services to Plaintiff;

4. An injunction to prevent Defendants from taking any further steps to terminate, suspend or otherwise interrupt sewer services to Plaintiff;

5. An injunction to prevent Defendants from further interference with Plaintiff's contractual relationships and business expectancies;

KILPATRICK, TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 467-9600

6. An award of actual, compensatory and punitive damages in an amount to be proven at trial;

7. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

8. For such other and further relief as the Court deems just, equitable and proper.

DATED this 9th day of December, 2015.

KILPATRICK, TOWNSEND & STOCKTON LLP

By:____________________
Rob Roy Smith, WSBA #33798
RRSmith@kilpatricktownsend.com
Claire Newman, WSBA #46200
CNewman@kilpatricktownsend.com
Rachel Saimons, WSBA #46553
RSaimons@kilpatricktownsend.com
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Telephone.: (206) 467-9600
Facsimile: (206) 623-6793

*Attorneys for Plaintiff*